IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CARL BRISCOE,

    Petitioner,

v.                                                          Civil Action No. 5:14-cv-40
                                                                     (Judge Stamp)

ANN MARY CARTER, WARDEN,

    Respondent.

## REPORT AND RECOMMENDATION

### I. Background

On March 24, 2014, *pro se* Petitioner, Carl Briscoe ("Petitioner"), filed an application for habeas corpus pursuant to 28 U.S.C. §2241. Petitioner is a federal inmate housed at FCI Morgantown and is challenging the denial of his request to have his sentenced lower or to be released under 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g) or what is often referred to as compassionate release. Respondents filed a response to Petitioner's motion on April 15, 2014, and, after a Roseboro Notice, Petitioner filed his reply. This matter is now pending before the undersigned for a report and recommendation.

### II. Facts

On March 11, 2011 Petitioner pleaded guilty to and was sentenced to ninety-five (95) months imprisonment for conspiracy to distribute 500 grams or more of cocaine substance and conspiracy to distribute a quantity of oxycodone in the United States District Court for the Eastern District of Kentucky. (Dkt. No. 8-1, p.1). Petitioner initially filed an appeal with the United States Court of Appeals for the Sixth Circuit but withdrew the appeal before any judgment or opinion was entered. (Doc. No. 1, p. 3).

On August 20, 2013, Petitioner filed a BP-9 with the warden of FCI Morgantown requesting compassionate release in order to take care of his wife. (Dkt. No. 1-1 at 1). Petitioner alleges that his wife, Melissa Briscoe, has several illnesses, including heart disease, mental illness, liver and kidney issues that leave her disabled. (Id. at 2). Petitioner maintains that his wife is currently on complete disability income from the Social Security Administration, and is required to use a specialized wheelchair and hospital bed at home. (Id.). Since his imprisonment Petitioner's mother, Edith Taylor, has been his wife's primary caregiver; however, due to her own health issues she is apparently no longer able to provide the necessary amount of care. (Id. at 4). Petitioner contends that there are no other members of his family or his wife's family who are able to give care to his wife because they are either not interested or live out of the state. (Id. at 5). Petitioner also included information regarding advancement he has made in prison, programs he has completed, and his post release plans. (Id. at 8-10). Petitioner requests release because he claims he is the only individual able to give primary care to his wife. (Id. at 1).

After Petitioner's request was rejected by the Respondent, he filed a BP-10 with the Board of Prisons ("BOP") regional director. (Dkt. No. 1-2 at 6). The regional director also denied Petitioner's request, finding that the Warden's response addressed his concerns. (Dkt. No. 1-2, p.4). Petitioner then filed a BP-11 with the Office of the General Counsel. The Office of the General Counsel has never responded to Petitioner's BP-11, and as such, Petitioner's BP-11 is deemed denied. Having exhausted his administrative remedies, Petitioner now brings this habeas corpus action.

### III. Standard of Proof

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United

States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. Motion for Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon , 943 F.2d 407 (4th Cir. 1991).

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c)(1)(A), show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, a court reviews all evidence "in the light most favorable" to the nonmoving party. Providence Square Assocs., L.L.C. v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir. 2000). It must limit its inquiry solely to a determination of whether genuine issues of triable fact exist. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a

scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 587-88 1986)

Elec. Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 587-88 1986)

### IV. Analysis

In his original pleading, Petitioner challenged both the decision to deny his request for release by the BOP, and the BOP's definition of disability. (Dkt. No. 1 at 5). However, in his reply to Respondent's response, Petitioner concedes that the BOP has complete discretion over whether to grant compassionate release. (Dkt. No. 11 at 1). Thus, the only issue left before this court is Petitioner's contention that the BOP abused its discretion and was legally wrong in the way it defines disability for the purpose of compassionate release under 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g).

Pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may not modify a term of imprisonment once it has been imposed except that –

(1) in any case –

> (A) the court upon motion of the Director of the Bureau of Prisons, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that –
>
> (I) extraordinary and compelling reasons warrant such a reduction...

BOP Program Statement 5050.49 sets forth the procedures for compassionate release/reduction in sentence. For purposes of this Program Statement, the terms "compassionate release" and "reduction in sentence" are used interchangeably. Pursuant to the Program Statement, the criteria for a reduction in sentence ("RIS") may include requests based on non-medical circumstances, including the incapacitation of the inmate's spouse or registered partner. For these requests, "incapacitation" means the inmate's spouse or registered partner has:

- Suffered a serious injury, or a debilitating physical illness and the result of the injury or illness is that the spouse or registered partner is completely disabled, meaning that the spouse or registered partner cannot carry on any self-care and is totally confined to a bed or chair; or

- A severe cognitive deficit (e.g., Alzheimer's disease or traumatic brain injury that has severely affected the spouse's or registered partner's mental capacity or function), but may not be confined to a bed or chair.

In the instant case, Petitioner applied for a RIS on August 20, 2013, by sending a request to the warden at FCI Morgantown. Petitioner then set forth the many illnesses from which he alleges his wife suffers. Petitioner also noted that his mother had been caring for his wife, but her age and own poor illness prohibited her from continuing to provide care. In addition, Petitioner alleged that his wife's sister and mother live in Florida and are unable to provide care, and his wife has had no contact with her brothers since she was a young child. In summary, Petitioner

alleged that there was no one else in the State of Ohio, the state in which is wife resides, who could be her primary caretaker.

On October 11, 2013, the warden denied Petitioner's request for RIS. The warden cited the language of Program Statement 5050.49 set forth above, and noted further that for such requests, the inmate should demonstrate that he is the only available caretaker for the spouse or registered partner, meaning there is no other family member or adequate care option that is able to provide primary care for the spouse or registered partner. In denying Petitioner's request, the warden stated the following:

> A review of your case information and the medical information provided by both your wife and your mother indicates you do not meet the criteria for Compassionate Release/RIS. In particular, your wife is not suffering from a debilitating physical illness or injury, and she appears able to provide self-care, as evidenced by the numerous visits you have received from her (and your mother) since your arrival at this institution in May 2010. Additional review indicate you have several other family members who reside either at the same address as your wife and mother, or who reside nearby. As such, you have not demonstrated that there is no other family member who is able to provide care for your wife.

(Dkt. No. 1-2, p. 1).

On October 29, 2013, Petitioner sent another BP-9 to the warden in which he again requested that he be granted a RIS and emphasized that the medical records provided to the BOP established that his wife is totally disabled and suffers with debilitating physical illness. In addition, Petitioner noted that five (5) people reside in his home in Dayton, Ohio. In addition to his mother and wife, the third person is his mother's adopted 14-year old son, who suffers from mental illness. The fourth person is his elder daughter, who is 22 years old and has a boyfriend in Columbus, with whom she stays most of the time. The fifth person is his younger daughter, who is 20 years old and has a full time job along with social activities outside the home. Accordingly,

Petitioner noted there was no other person who can be a full time care giver for his wife. (Dkt. 1-2, p. 3).

On November 12, 2013, the warden again rejected Petitioner's request for RIS. In so doing, the warden noted as follows:

> As indicated in our previous response, dated October 11, 2013, the fact that your wife and mother were able to visit you on several occasions is evidence that they are not completely disabled or incapacitated. Because providing proof of complete incapacitation of your spouse as described above is primary, whether or not someone is available to assist in her care is not relevant at this stage of the review process. However, stating that your adult daughters are unable to assist your wife because of social activities/employment outside of the home does not confirm the unavailability of anyone other than you to care for your wife.

(Dkt. No. 1-2, p. 4.**).**

The BOP may recommend that prisoners be released at any time if there are extraordinary or compelling circumstances, which could not have been foreseen by the sentencing court. 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g). Because Congress did not state what would constitute an extraordinary or compelling circumstance, the task of defining it was left up to the BOP. Over time what constituted an extraordinary or compelling circumstance has changed, and eventually the BOP added being the only person able to provide care to an incapacitated spouse or partner as one of these circumstances. Ultimately, the BOP defined incapacitated to mean:

> Suffer[ing] a serious, or debilitating physical illness and the result of the injury or illness is that the spouse or registered partner is completely disabled, meaning that the spouse or registered partner cannot carry on any self-care and is totally confined to a bed or chair. P.S. 5050.49.

Having acknowledged that the decision of the BOP to grant or deny a request for compassionate release is judicially unreviewable,[1] Petitioner attempts to circumvent the court's

---

[1] Because Congress left the discretion and responsibility of defining what constitutes extraordinary or compelling cirsumstances up to the BOP, the BOP's decision decision is given defeence under <u>Chevron v. Natural Resources Defense Counsel</u>, 4467 U.S. 837 (1984).

lack of jurisdiction by seeking an order that the BOP change its definition of disability to align with the ADA. More specifically, Petitioner contends that the BOP's definition of disabled or incapacitated is not only improper but illegal since it does not comport with the definition of disabled in the Americans with Disabilities Act ("ADA"). (Dkt. No. 1 at 11). He also contends that the court must require the BOP to comport with this definition and review his case under the new definitions. (Id.).

The BOP defined disabled as cited in P.S. 5050.49 as stated above. Other than his desire to have his request for compassionate release reconsidered, Petitioner provides no basis for his argument that Congress intended for the BOP to define disability in a manner consistent with the ADA's definition of disability.

BOP program statements are internal agency guidelines that have not been subjected to notice and comment rulemaking. Reno v. Koray, 515 U.S. 50, 61 (1995); Cunningham v. Scibana, 259 F.3d 303, 306 (4th Cir. 2001). However, to the extent that Petitioner is challenging the BOP's definition of "disabled," it is entitled to deference as long as it is a permissible construction of the statute and has the power to persuade. *See* Reno, 515 U.S. at 61; *see also* Christensen v. Harris County, 529 U.S. 576, 587 (2000); and Cunningham, 259 F.3d at 306..

Under this standard, the BOP's definition of disabled should be given deference. The most important determination is whether the definition is permissible under the statute, and in this case the BOP's definition is permissible because the statute does not speak directly to what qualifies as an extraordinary or compelling circumstance let alone what it means to be incapacitated or disabled. Because the BOP is within its power to make caring for a spouse that is incapacitated an extraordinary or compelling circumstance that triggers the statute, it is also within its power to

define what it means to be disabled, assuming the definitions meet the other <u>Skidmore</u> requirements. This is exactly what the BOP has done.

The next two <u>Skidmore</u> requirements are connected. In order for the definition to be legally enforceable, it must be reasonable and persuasive. As something would rarely be persuasive if it was unreasonable these two requirements can be handled simultaneously. As part of whether or not the BOP's definition is persuasive, it must be shown that Congress did not mean that every government agency or entity use the definition found in the ADA. In fact, most agencies that deal with disability define it differently.[2] This is necessary and expected as each different agency, program, etc. has a different purpose.[3] Given these different purposes, it is persuasive that the BOP's definition be stricter given that it permits release of a criminal that is possible a danger to society and has not fully repaid his debt to society. These differences in definitions are supported by case law even in programs that are relatively similar in purpose. <u>Johnson v. Astrue</u>, 2011 U.S. Dist. LEXIS 141937 (C.D. Cal. 2011)(Finding that the definition of disabled that allowed a worker to obtain workers compensation benefits was different and did not mean the worker was disabled and entitled to benefits under social security); *see also* <u>Barnett v. Astrue</u>, 2012 U.S. Dist. LEXIS 3013 (S.D.W. VA. 2012)(Holding that a finding of disability by the VA is based on different criteria and concerns and is not binding on the SSA). Thus, the BOP's stricter definition is enforceable under <u>Skidmore</u> and its line of cases.

Finally, it is pertinent to note that a writ of habeas corpus shall not issue unless the prisoner is "in custody in violation of the Constitution, or laws or treaties of the United States."

---

[2] Disability is defined differently by the ADA, Social Security Administration, Veterans Association, Workers Compensation Board, the Department of Labor, the Board of Prisons, and various other agencies.

[3] Using the three agencies put forward in this case as examples. The BOP's purpose in compassionate releases would be to allow inmates in very narrow circumstances to provide for their spouses when there is absolutely no other option. The ADA's purpose is to prevent discrimination against disabled individuals and allow them to lead as close to normal lives as possible, and the SSA's purpose is to make determination as to payments disabled individuals should receive to offset the financial hardships and earning potential their disability caused.

See 28 U.S.C. § 2241(c)(3). Accordingly, regardless of the analysis set forth above, the petitioner's allegation that he was improperly denied his request for compassionate release fails because no right, either constitutional or statutory, guarantees such relief.

Although Petitioner alleges that his due process right have been violated, the Supreme Court has concluded that the due process rights of prisoners are limited to freedom from restraints which impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Connor, 515 U.S. 472, 484 (1995). The undersigned recognizes that the Supreme Court has held that a liberty interest invoking Due Process protection my be found within a statutory framework. See Wolff v. McDonnell, 418 U.S. 539 (1974)(where a statute provide mandatory sentence reduction for good conduct, the loss of good conduct must be accompanied by procedural safeguards to satisfy due process).

However, the statute at issue in this case contains none of the guarantees that resulted in the Wolff decision. All Petitioner can reasonably expect from the language of 18 U.S.C. § 3582(c)(1)(A)(I) is that the Director of the BOP may make a motion for sentence reduction. However, the statute provides no absolute as to when, if at all, the Director should make such a motion. Furthermore, § 3582(c)(1)(A) states that the court **may** grant the Director's motion if it finds extraordinary or compelling reasons warranting the reduction, and if the reduction is consistent with applicable sentencing factors and policy statements of the Sentencing Commission. Accordingly, because the Director of the BOP has full authority to initiate a motion, and by deferring to the Court's authority with permissive language, the statute clearly does not entitle Petitioner to a sentence reduction. In summary, Petitioner has no inherent right to be released before the expiration of his sentence. Vann v. Angelone, 73 F.3d 519, 520 (4th Cir. 1996)(citing Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex, 442 U.S. 1,

7 (1979). Therefore, he cannot show that his continued custody violates the Constitution or laws of the United States, and his petition is due to be dismissed.

## IV. Conclusion

Based on the foregoing, the undersigned recommends that Respondent's motion to dismiss or motion for summary judgment (Doc. No. 7) be **GRANTED** and Petitioner's §2241 motion be **DENIED and DISMISSED WITH PREJUDICE**.

Within fourteen (14) days after being served with a copy of this report and recommendation, any party may file with the clerk of the court, written objections identifying the portions of the report and recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, United States District Judge. Failure to timely file objections to the report and recommendation set forth above will result in waiver of the right to appeal from a judgment of this court based upon such report and recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The clerk of the court is directed to mail a copy of this report and recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet.

DATED: November 10, 2014

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE