IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CARL BRISCOE,

    Petitioner,

v.                                  Civil Action No. 5:14CV40
                                            (STAMP)

ANNE MARY CARTER,

    Respondent.

**MEMORANDUM OPINION AND ORDER
AFFIRMING AND ADOPTING REPORT AND
RECOMMENDATION OF THE MAGISTRATE JUDGE,
DISMISSING THE PETITIONER'S APPLICATION WITH
PREJUDICE, AND OVERRULING THE PETITIONER'S OBJECTIONS**

I.    Background

The petitioner, proceeding pro se,[1] filed an application of habeas corpus pursuant to 28 U.S.C. § 2241. In his petition, the petitioner frames the issue and his argument as whether the Bureau of Prisons ("BOP") abused its discretion by (1) denying his request for compassionate release, and (2) failing to comply with the definition of "disabled" found under the Americans with Disabilities Act ("ADA"). The petitioner initially sought compassionate release because his wife, who receives Social Security benefits, is disabled. In his grievances and his petition, he alleges that his mother, who normally cared for his wife, fell ill as well. Thus, because no one else can allegedly

---

[1]"Pro se" describes a person who represents himself in a court proceeding without the assistance of a lawyer. Black's Law Dictionary 1416 (10th ed. 2014).

take care of his wife, he argues that he needs to care for her. For relief, he requests that this Court enter an order directing the BOP to alter its definition of "incapacitated" so as to comply with the definition of "disability" set forth in the ADA. Once the proper definition is applied to the petitioner's request, he claims that the BOP will grant him compassionate release. Although he submitted administrative forms and grievances to the BOP, he claims to have received no response. However, his petition contains a response to his grievance for an administrative remedy, in which Warden Anne Mary Carter ("the Warden") denies his request. The Warden denied the petitioner's request because the petitioner's wife and mother have both visited him while he has been incarcerated. Because she is not incapacitated as the BOP requires, he was not eligible for compassionate release. The petitioner then attempted to appeal the Warden's decision, which was affirmed.

Following the filing of the petition, the Warden filed a combined motion to dismiss or in the alternative motion for summary judgment. ECF No. 7. In it, the respondent first argues that this Court lacks jurisdiction to review the BOP's decision regarding requests for compassionate release. Second, within the standard for granting compassionate release, the respondent claims that the BOP reasonably interpreted the requirements for meeting the standard and thus, it is entitled to deference. Third, the

2

respondent claims that the interpretation of "disabled" is entitled to at least deference under Skidmore v. Swift & Co., 323 U.S. 134 (1944), if not more deference pursuant to Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc, 467 U.S. 837 (1984). Finally, the respondent claims that the petitioner cannot demonstrate he is in custody of the BOP in violation of the Constitution or any other laws. Thus, the Warden requests this Court grant her motion.

Regarding the Warden's motion, the magistrate judge then entered a notice under Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975), notifying the petitioner that a failure to respond to the Warden's motion may result in a judgment against him. ECF No. 9. The petitioner then timely filed a response, labeled as a reply. ECF No. 11. In his response, the petitioner first claims that the Warden's interpretation of compassionate release and its standard are not entitled to Chevron deference. Second, because his wife is disabled under the allegedly more stringent standards set forth under the Social Security Act and ADA, his circumstances satisfy those required for granting compassionate release. Further, he points out that other statutes and agencies define disabled differently. Finally, he claims that his due process rights and liberty interests have been infringed upon by the BOP and the Warden.

The magistrate judge then entered a report and recommendation, in which he recommended granting the respondent's motion and denying with prejudice the petitioner's motion. ECF No. 13. First, the magistrate judge found that the BOP's interpretation of the requirements of compassionate release should receive Chevron deference. Second, the magistrate judge determined that the BOP's definition of "incapacitated" is entitled to Skidmore deference. Finally, the magistrate judge found that the petitioner is not being held in violation of any laws of the United States. For those reasons, he recommended that the Warden's motion to dismiss be granted and that the petitioner's motion be denied and dismissed with prejudice.

The petitioner then timely filed his objections to the report and recommendation. ECF No. 15. In his objections, he first argues that the ADA's definition of disabled should apply to the BOP and thus, he should be granted compassionate release. Second, he claims that because the BOP considered his request for compassionate release in an unreasonable manner, his due process rights were violated. Thus, he alleges that he is being held in violation of the laws of the United States and therefore, his petition is appropriate.

For the reasons set forth below, the report and recommendation of the magistrate judge is affirmed and adopted, and the petitioner's objections are overruled.

## II. Applicable Law

Under 28 U.S.C. § 636(b)(1)(C), this Court must conduct a de novo review of any portion of the magistrate judge's recommendation to which an objection is timely made. Because the petitioner filed objections to the report and recommendation, the magistrate judge's recommendation will be reviewed de novo.

## III. Discussion

It should be noted that the petitioner, as the magistrate judge correctly points out, initially challenged both the BOP's denial of his request for relief and the BOP's definition of disability. However, in his response to the Warden's motion, the petitioner admits that the BOP maintains discretion in deciding whether to grant compassionate release. ECF No. 11. Accordingly, the only issue before this Court is whether the BOP abused its discretion in defining the term "incapacitated" regarding compassionate release.

Regarding the modification of a term of imprisonment, 18 U.S.C. § 3582(c)(1)(A) provides that after a term of imprisonment has been imposed, a court may not modify that term unless certain circumstances apply. Most relevant to the issue in this civil action, § 3582 provides that:

> (1) in any case—
>     (A) the court, upon motion of the Director of the Bureau of Prisons, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment),

5

> after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>> (i) extraordinary and compelling reasons warrant such a reduction[.]

18 U.S.C. § 3582(c)(1)(A)(i)(2014). The BOP uses the above quoted section "in particularly extraordinary or compelling circumstances which could not reasonably have been foreseen by the court at the time of sentencing." 28 C.F.R. § 571.60 (2012). This is referred to as "compassionate release." Id. In analyzing the code, it is apparent that Congress did not define the phrase "extraordinary and compelling."

Compassionate release may be awarded under rare circumstances, one of which is the incapacitation of an inmate's spouse or registered partner "when the inmate would be the only available care giver for the spouse or registered partner." P.S. 5050.49. At issue here is the definition of incapacitated. The BOP, in its Program Statement 5050.49, defines incapacitated as "suffered a serious injury, or a debilitating physical illness and the result of the injury or illness is that the spouse or registered partner is completely disabled, meaning that the spouse or registered partner cannot carry on any self-care and is totally confined to a bed or chair[.]" Id.

The petitioner points out that the above definition of "incapacitated" fails to align with the definition of "disability" under the ADA. Under the ADA, the term "disability" is defined as

"a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102 (2014). A person with such a disability is considered disabled. Id. Because the ADA's definition of "disability" and the BOP's definition of incapacitated allegedly conflict, the petitioner claims that the BOP's definition is improper and illegal. In order to properly address the petitioner's argument, this Court must first determine what level of deference is appropriate concerning the BOP's interpretation of "extraordinary and compelling" as well as its definition of "incapacitated."

Under the Chevron doctrine, "if the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842–43 (1984).

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

Chevron, 467 U.S. at 842-43. The Supreme Court has "held that Chevron deference is appropriate 'when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority.' Our inquiry in that regard does not turn on whether Congress's delegation of authority was general or specific." Mayo Found. for Med. Educ. & Research v. United States, 131 S. Ct. 704, 713-14 (2011) (quoting United States v. Mead Corp., 533 U.S. 218, at 226-27 (2001)).

"[I]f the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, . . . or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise," then the resulting regulation is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law." Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Auto. Ins. Co., 464 U.S. 29, 43 (1983) (citing SEC v. Chenery Corp, 332 U.S. 194, 196 (1947)).

As mentioned earlier, Congress did not define what "extraordinary and compelling" means. Further, Congress did not specifically authorize the BOP to define the phrase. Thus, under the first step of Chevron, Congress did not speak precisely to the question at issue. Next, pursuant to the second step under

8

Chevron, this Court must decide whether the BOP filled this statutory gap "in a way that is reasonable in light of the legislature's revealed design." Lopez v. Davis, 531 U.S. 230 (2001). Looking at the interpretation provided under its program statement, the BOP's interpretation of "extraordinary and compelling" is reasonable for a number of reasons. First, the BOP's interpretation is reasonable because of its exclusiveness, meaning that it limits the number of individuals eligible for compassionate release to those cases that are both deserving and rare. Second, the BOP's interpretation is also reasonable because of its inclusiveness, meaning that the BOP's interpretation maintains sufficient breadth to apply to unique and different circumstances that fail to satisfy the traditional view of what is "extraordinary and compelling." Therefore, this Court finds that Chevron deference does apply to the BOP's interpretation of "extraordinary and compelling." Accordingly, the BOP's interpretation of the phrase comes in the form of "force of law" and thus, it receives deference based on its status as an entity that has impliedly been delegated this interpretative authority.

However, the analysis does not end there. Although Chevron applies to the BOP's interpretation of "extraordinary and compelling," this Court now turns to the petitioner's objections and arguments concerning the "conflicting" definitions of disabled and incapacitated. Regarding the BOP's definition of

incapacitated, that definition is found under a BOP program statement, which is considered an internal agency guideline. Reno v. Koray, 515 U.S. 50, 61 (1995). Because a program statement is an internal agency guideline, it is not the same as a "published regulation[] subject to the rigors of the Administrative Procedur[e] Act, including public notice and comment." Id. (internal citations omitted). Thus, less deference may be afforded such an internal regulation. However, an internal agency guideline such as a program statement may still be entitled to some deference. Id. When Chevron deference is not merited, deference under Skidmore may apply. Skidmore holds that "an agency's interpretation may merit some deference whatever its form, given the 'specialized experience and broader investigations and information' available to the agency." Mead Corp., 533 U.S. at 235. Further, "[t]he weight accorded to an administrative judgment 'will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.'" Mead Corp., 533 U.S. at 219 (citing Skidmore, 323 U.S. at 140). Thus, the key determination is the persuasiveness of the agency determination, which is determined pursuant to the several considerations stated above.

Regarding the definition of "incapacitated," the magistrate judge determined that Skidmore deference should apply to the BOP's definition provided in its Program Statement 5050.49. This Court agrees. Here, the BOP's definition of "incapacitation," as found under Program Statement 5050.49, is entitled to at least Skidmore deference. First, the BOP's program statement concerning compassionate release is clearly within the BOP's expertise. The BOP is responsible for administering the sentences of federal offenders and thus, its determination of any proposed reduction of a sentence lies within that responsibility. Second, regarding the validity of the reasoning behind the program statement, it clearly proves reasonable. Similar to the reasonableness of the BOP's interpretation of "extraordinary and compelling," here the term "incapacitated" as defined by the BOP provides an inclusiveness and exclusiveness that ensures the proper use of compassionate release. Further, the most recent pronouncements and definitions found in Program Statement 5050.49 were approved and published on August 12, 2013. That program statement was made after the Office of the Inspector General completed a six-year study in April 2013 concerning improvements and recommendations for the compassionate release program. See The Federal Bureau of Prisons' Compassionate Release Program (2013). That clearly demonstrates that the currently applicable program statement, which contains the definition of incapacitated, was made and supported by a reasoned

analysis.  Finally, although slightly unclear as to when the regulations and program statements concerning the compassionate release program were enacted, the opportunity to seek such release has existed since the enactment of the Sentencing Reform Act on October 12, 1984.  That shows the program has existed for a significant period of time, which the BOP has handled throughout that time.  All of the above considerations ensure that Program Statement 5050.49 can be deemed persuasive, and thus receives Skidmore deference.

The petitioner objects to any deference being awarded to the BOP's definition of incapacitated because it allegedly conflicts with the definition of "disability" found under the ADA.  However, that simply has no bearing regarding the deference that the BOP's definition receives.  It has no bearing because the BOP and ADA's definitions are used in completely different contexts.  The ADA serves to eliminate "discrimination against individuals with disabilities" by invoking "the sweep of congressional authority . . . in order to address the major areas of discrimination faced day-to-day by people with disabilities."  42 U.S.C. § 12101 (2012).  However, the compassionate release program serves instead to permit inmates with extraordinary and compelling circumstances, which were unforeseen at the time of sentencing, to have an opportunity to reduce their sentences for appropriate and justified reasons at the BOP's discretion.  See generally P.S. 5050.49.  The petitioner

offers no evidence that demonstrates Congress intended the terms of the ADA to bind the BOP's compassionate release program, or vice versa. The petitioner also fails to demonstrate that Congress intended for the BOP to consistently define the term "incapacitated" with the ADA's definition of "disabled." Thus, the petitioner's objection has no merit and is overruled.

It should be noted that the petitioner also argues in his objections that he is being held in violation of his due process rights or under equal protection grounds. Namely, he claims that because the Warden unreasonably reviewed his requests for compassionate release, he is suffering a violation of his due process rights or a violation of Equal Protection. However, this Court again agrees with the findings of the magistrate judge. In particular, the Director of the BOP has full authority to initiate any motion regarding a reduction in sentence under 18 U.S.C. § 3582. Further, nowhere in the statute does a guarantee or inherent right exist concerning an inmates release before the expiration of his sentence. See Vann v. Angelone, 73 F.3d 519, 521 (4th Cir. 1996). Finally, as the magistrate judge correctly pointed out, what the petitioner can reasonably expect in this situation is that the Director of the BOP may, upon its discretion, file a motion for a sentence reduction and nothing more. The petitioner offers no evidence of an improper review or

investigation as to his compassionate release request by the Warden or BOP.  Therefore, the petitioner's objection is overruled.

IV. <u>Conclusion</u>

For the reasons described above, the report and recommendation by the magistrate judge is AFFIRMED AND ADOPTED.  ECF No. 13.  Accordingly, the petitioner's application is DISMISSED WITH PREJUDICE and his objections are OVERRULED.  ECF No. 15. It is further ORDERED that this civil action be DISMISSED and STRICKEN from the active docket of this Court.

Should the petitioner choose to appeal the judgment of this Court to the United States Court of Appeals for the Fourth Circuit on the issues to which objection was made, he is ADVISED that he must file a notice of appeal with the Clerk of this Court within 60 days after the date of the entry of the judgment order.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to the <u>pro se</u> petitioner by certified mail and to counsel of record herein.  Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:   December 18, 2014

<u>/s/ Frederick P. Stamp, Jr.</u>
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE